Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 525 | **DATE** | 12/22/2003 |
| **CASE TITLE** | United States vs. Marcus Buckley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons stated in the attached Memorandum Opinion and Order, defendant Buckley will be held responsible for the quantity of drugs smuggled by Felay Nelson, but not Brenda Wines or Stacey Darr, as relevant conduct when the court calculates defendant's base offense level at sentencing. The court hereby sets defendant Buckley's sentencing for January 30, 2004 at 2:00PM.

(11) ■ [For further detail see order attached to the original minute order.]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 00 CR 525 |
| v. | ) | |
| | ) | |
| MARCUS BUCKLEY, | ) | Judge Joan B. Gottschall |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 9, 2001, defendant Marcus Buckley entered a blind plea to the single count indictment in this case, charging him with knowingly and intentionally importing into the United States approximately 190.2 grams of a mixture containing cocaine. The court on November 26, 2002, granted Buckley's request to withdraw his guilty plea. Buckley was ultimately granted leave to appear *pro se* with the assistance of Nishay K. Sanan, who was appointed as standby counsel. On June 5, 2002, Buckley entered a blind plea of guilty to the indictment, conditioned on his ability to preserve for appeal the denial of his motion to suppress evidence.

Defendant Buckley was a "swallower." He was arrested on July 5, 2000, attempting to enter the United States from Jamaica with 190.2 grams of cocaine in pellets in his digestive tract. The sentencing guidelines dictate that 190.2 grams of cocaine is the equivalent of 38.04 kilograms of marijuana, subjecting defendant to an offense level of 18 and a sentence, given that his criminal history category is II, of 30-37 months (which, with a 3 point reduction for acceptance of responsibility if the court finds the facts in defendant's favor, is 21-27 months). The government, however, seeks to persuade this court that defendant is responsible for the

-1-

conduct of couriers who imported cocaine on two other occasions, a trip taken on or about June 20, 2000, by Felay Nelson, who brought back from Jamaica 213.9 grams of cocaine, and a trip on or about June 27, 2000, by Stacey Darr and Brenda Wines, who together brought back 1351.8 grams of cocaine and 289.1 grams of heroin, making defendant responsible for a total of the equivalent of 640.12 kilograms of marijuana, giving him a base offense level of 28 and a sentencing range of 87-108 months, reducible by 2, 3 or 4 levels if the court finds that defendant's role in the offense justifies some downward role adjustment. The government's theory is that defendant is responsible for the drug importations of Nelson, Wines, and Darr either as an "aider and abettor" or "in furtherance of a jointly undertaken criminal activity," both of which can qualify as "relevant conduct" under the Sentencing Guidelines. *See* U.S.S.G. § 1B1.3.

## I. FACTS

Because defendant has denied involvement in the government's putative "relevant conduct," the court held a hearing on this issue on September 19, 2003. The evidence was as follows. Early in June 2000, defendant and another individual named "Fresh" traveled to Battle Creek, Michigan, where they picked up two young women, Felay Nelson and Laila Latham, and drove them back to Chicago. Laila had invited Felay to journey to Jamaica with her to pick up cocaine, and Felay and Laila met at Laila's house where they were picked up by Fresh and defendant Buckley. The car belonged to Fresh, but defendant Buckley did the driving. The government concedes that Fresh was "the leader." The women were dropped off at the Lincolnwood Motel where they went to sleep. A day later, defendant and Fresh drove them to an apartment on Estes Avenue in Chicago which the women understood to belong to "Dexter,"

-2-

whose true name is Lance Patrick. The government represented that defendant shares an apartment in that same Estes Avenue building with his uncle Sylvester, and Fresh lives in another apartment in the building. One apartment in the building was occupied by the wife of Fresh; another was occupied by Patrick. Nelson testified that while staying at the Estes apartment, she went out with Fresh, Dexter, Latham and "a lot more Jamaicans" and that defendant Buckley drove them. They stayed in that apartment for a couple of days. At some point they were driven by defendant to the apartment of "One Strand," where they met someone named "Xavier." In preparation for their trip to Jamaica, they were driven to a travel agency by defendant, where Fresh talked to the travel agent, made the arrangements and bought airline tickets for the women. The next day Nelson and Latham went to the airport with defendant driving and Fresh in the car. On the way to the airport, Fresh told the women that if they got caught, they should keep their mouths shut, and he would call Nelson's mother and let her know Nelson was locked up. During this conversation, defendant was driving, Nelson and Latham were in the back seat, and Fresh turned around from the front passenger seat to talk with the women. There was no other discussion of drugs or criminal activity in the defendant's presence. Returning to Chicago O'Hare airport on June 20, Nelson was stopped and arrested, but Latham passed through customs and returned to Chicago without incident. At no time, according to Nelson's testimony, did defendant Buckley make arrangements, buy tickets, or participate in any conversations involving illegal activity, except that he was driving the car when Fresh told the women not to say anything if they got caught.

Later in June defendant and Fresh traveled again to Battle Creek where they picked up Brenda Wines and Stacy Darr, whom they transported back to Chicago to Fresh's Estes Avenue

apartment. These two individuals at some point went on to Jamaica, where they obtained heroin and cocaine which they swallowed and brought back in vaginal inserts. They were originally scheduled to fly back to Chicago but after the arrest of Nelson, someone arranged for them to be rerouted instead to New York, arriving on June 27, where both were arrested and prosecuted.

A few days after the arrest of Wines and Darr, defendant Buckley traveled to Jamaica, swallowed cocaine, and was arrested on his return to Chicago on July 4.

During the course of the undercover investigation in this case, the government's cooperating individual (CI) had recorded telephone conversations with Patrick. Defendant was not intercepted in any of these conversations. These conversations involved discussions about purchasing airline tickets, as the CI had access to a source of such tickets. The CI, who was arranging the purchase of the tickets, asked for names to put on the tickets and on one occasion, Lance Patrick suggested his own name and Marcos [sic] Buckley. No tickets were issued in these individuals' names, however.

In January 2001, the agents wired an apartment occupied by Lance Patrick for sound and video. Patrick spoke of how he had couriers who had been arrested. He mentioned Nelson and he mentioned two girls caught in New York. He also identified defendant Buckley as a swallower.

Finally, the pretrial services officer reports that defendant made various incriminating admissions to her. First, she states that Buckley told her that he brought 14 grams of drugs back from Jamaica in April 2000 and that the trip at the end of which he was arrested was his second trip. He also admitted "that he was generally aware that Stacey Darr and Brenda Wines were traveling to Chicago to make a drug importation trip" but maintained that he did not discuss their plans with them.

## II.   DISCUSSION

### *a. Standard of review*

The usual standard for proving relevant conduct at sentencing is preponderance of the evidence, *see United States v. Bequette*, 309 F.3d 448, 451 (7th Cir. 2002), but in this case defendant argues that the government should be held to a higher standard because he will face a significantly greater sentence based on relevant conduct than on his offense of conviction, *see United States v. Boos*, 329 F.3d 907, 909 (7th Cir. 2003) (suggesting a higher standard of proof "might be necessary in the rare instance when a factual finding will result in a sentencing increase so great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense") (internal quotations omitted). The court reads the case law as suggesting the appropriateness of an elevated standard of proof in cases where, as here, the potential increase in defendant's sentence based on relevant conduct is grossly disproportionate to his sentence based on the offense of conviction. *See, e.g., United States v. Johnson*, 342 F.3d 731, 735-36 (7th Cir. 2003); *United States v. Smith*, 308 F.3d 726, 748 (7th Cir. 2002); *United States v. Rodriguez*, 67 F.3d 1312, 1322 (7th Cir. 1995); *United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir. 1993). But despite the apparent validity of this legal principle, the court has been unable to find a single case in this circuit where the prosecution has in fact been held to the higher standard of proof. *Boos*, 329 F.3d at 909 ("we have never taken the final step and actually required the prosecution to meet a clear and convincing evidence standard").

Here, based upon the drug quantities to which defendant pleaded guilty and without considering other possible offense level adjustments, defendant would face 30-37 months in prison if sentenced only on his offense of conviction and 87-108 months in prison if sentenced on

the alleged relevant conduct. This difference of roughly 5-7 years, or an increase by a factor of about 3, between defendant's sentence based on the offense of conviction and on relevant conduct, falls within a range that the Seventh Circuit has held does not warrant the higher standard of proof. *See Boos*, 329 F.3d at 908-9 (increase from 121-151 months to 30 years); *Rodriguez*, 67 F.3d at 1323 (increase from 51-63 months to life imprisonment); *United States v. Masters*, 978 F.2d 281, 286-87 (7th Cir. 1992) (increase from 33-41 months to 40 years); *United States v. Schuster*, 948 F.2d 313, 315-16 (7th Cir. 1991) (increase from 0-5 years to 5-40 years). Following this authority, the court concludes that the government must prove relevant conduct only by a preponderance of the evidence.

### *b. Relevant conduct*

The Sentencing Guidelines require the court to determine defendant's base offense level by including both his offense of conviction, in this case importing 190.2 grams of cocaine, and any uncharged conduct which is germane to the that offense. U.S.S.G. § 1B1.3; *United States v. Johnson*, 347 F.3d 635, 638 (7th Cir. 2003). When a drug offense is involved, relevant conduct encompasses not only the defendant's own acts or omissions that aided or abetted others in the commission of the crime and the reasonably foreseeable acts or omissions of others in furtherance of a jointly undertaken criminal activity, U.S.S.G. § 1B1.3(a)(1)(A)-(B), but also all uncharged acts or omissions that were part of the same course of conduct as the offense of conviction, *id.* at § 1B1.3(a)(2). The government in this case seeks to add the quantity of drugs smuggled into the country by Nelson, Wines, and Darr in calculating defendant's base offense level, arguing first that defendant aided and abetted the commission of their crimes by driving the women from place to place before they departed for Jamaica; and second that because defendant

had jointly undertaken with Fresh and Patrick to import drugs from Jamaica , he could reasonably foresee the women's drug smuggling activities advancing this criminal scheme. The court need accept only one of the government's arguments to find defendant liable for the drug quantities of Nelson, Wines, and Darr. *See United States v. Guerrero-Martinez*, 240 F.3d 637, 642 (7th Cir. 2001) (proving either aiding and abetting or jointly undertaken criminal activity sufficient to include uncharged conduct in defendant's base offense level).

Beginning first with the concept of a jointly undertaken criminal activity, described by the Guidelines as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy," U.S.S.G. § 1B1.3 comment. (n.2), the court finds that the government has failed to produce the evidence required to find defendant liable for the drug quantities smuggled by Nelson, Darr, and Wines. The Guidelines provide that a defendant convicted of a single drug offense may be held liable for the reasonably foreseeable actions and drug quantities of others in furtherance of a much larger drug operation. *United States v. Gutierrez-Herrera*, 293 F.3d 373, 376 (7th Cir. 2002). But the mere existence of a jointly undertaken criminal activity does not impart unlimited liability on every defendant who knows of or joins in it. Instead, the sentencing court must inquire into the scope of the criminal activity that the defendant agreed to undertake jointly and decide whether others' actions were reasonably foreseeable within the limits of defendant's involvement in the scheme. *United States v. Brumfield*, 301 F.3d 724, 733 (7th Cir. 2002). Where, as here, the government seeks to include drug quantities from others' transactions as relevant conduct, it first must show that the quantities handled by others were in furtherance of the defendant's own criminal designs. *United States v. Pagan*, 196 F.3d 884, 892 (7th Cir. 1999). It is for this reason that independent street-level drug

dealers are generally not held accountable for quantities of drugs sold by other street dealers even if they share the same supplier; each dealer's criminal designs are limited to his own sales and profits. U.S.S.G. § 1B1.3 comment. (n. 2), illus. (c)(6). In contrast, dealers who collaborate with one another to maximize resources and gains are held accountable for the actions and quantities of all interested collaborators. *Id.*

In this case, it is clear that defendant joined a criminal drug enterprise at least for the purpose of his own smuggling of cocaine from Jamaica to the United States. It is also clear that defendant knew that the criminal enterprise similarly utilized other drug couriers for the purpose of importing cocaine and heroin into the United States. But to pin the drug quantities of Nelson, Darr, and Wines on defendant, the government has to show more than defendant's awareness that such criminal activities were potentially afoot: it must prove that the actions of the three women were within the scope of defendant's involvement in the drug ring and that defendant had joined the criminal enterprise at a level where he had some stake, financial or otherwise, in the venture beyond his own role. *See Pagan*, 196 F.3d at 892. The government has not made such a showing here: it offers no evidence at all concerning defendant's role in the criminal enterprise beyond his own activities as two-occasion drug mule and part-time chauffeur, and the court does not find any other evidence in the record from which to infer anything more. The court therefore rejects the government's argument that the women's drug quantities be included as relevant conduct based on the jointly undertaken criminal activity theory.

Next, the court turns to the aiding and abetting theory of liability, under which a defendant may be held accountable for uncharged conduct if he aided and abetted his principal to commit a crime and if he wanted the principal to succeed in committing it. *Guerrero-Martinez,*

240 F.3d at 641. In other words, the court should hold defendant Buckley responsible for the drugs smuggled by Nelson, Darr, and Wines if it finds that he knew of the criminal nature of their actions and deliberately rendered what he knew to be active and material aid in carrying out their crime. *United States v. Ortega*, 44 F.3d 505, 508 (7th Cir. 1995). First, there is ample evidence in the record to prove that defendant knew enough about Nelson, Darr, and Wines's drug smuggling to satisfy the knowledge requirement of aiding and abetting: defendant admitted that he knew about the group's drug smuggling activity and of the use of other swallowers like himself to carry drugs from Jamaica, he shared an apartment with Patrick, frequently fraternized with Fresh, and he sat in the car during a brief conversation about smuggling between Nelson and Fresh. While defendant never explicitly talked about drug smuggling with the women, never bought them plane tickets nor made any travel arrangements for them, never paid them nor saw them being paid, and never discussed their smuggling with them or anyone else, he nevertheless was generally aware of the drug smuggling operation run by Fresh, Patrick, and the other "Jamaicans."

Before finding defendant liable for the crimes of Nelson, Darr, and Wines, however, the court must also determine whether defendant's own actions qualify as deliberate and material assistance to their crimes. The government contends that defendant's knowledge of the criminal activity going on around him, specifically his admission that he believed Darr and Wines were traveling to Chicago for a smuggling trip, coupled with driving the women to Chicago and within the city once they arrived, is enough to constitute aiding and abetting. The court disagrees. Though the case law does not define it, there must exist some outer limit to the actions that constitute aiding and abetting under the Guidelines, some point beyond which otherwise lawful

-9-

conduct, even if it remotely furthers the criminal act, is so far removed that it cannot implicate the defendant in the crime. The court believes that the facts of this case delineate those outer boundaries. In particular, defendant's interactions with Nelson differ so materially from his interactions with Darr and Wines that the court draws the line between conduct that is aiding and abetting and conduct that is not based on these differences.

Beginning with conduct that is not aiding and abetting, the court will not hold defendant accountable for the drugs imported by Darr and Wines. As discussed above, aiding and abetting requires not only knowledge of the crime afoot, but deliberate and material assistance in accomplishing it. Even assuming defendant knew that Darr and Wines might at some future time smuggle drugs, he did not provide the requisite material assistance by merely driving the women from Battle Creek to Chicago and dropping them off at the Estes apartment complex. Some time after that either Fresh or Patrick bought plane tickets for the women, sent them to Jamaica with instructions for picking up the drugs and smuggling them back, and ordered them to fly a different route back to avoid arrest. Defendant had no further contact with the women beyond driving them to Chicago and he did not assist them with any pertinent aspect of their crime, like buying their plane tickets or driving them to the airport, nor did he provide them with instructions regarding quantity or technique, nor was he involved in re-routing their return flight to New York to avoid detection after another courier got caught arriving in Chicago. In fact, without defendant's knowledge or assistance, Darr made a round-trip journey on her own to Oberlin, Ohio, shortly after she arrived in Chicago to get documentation for her departure to Jamaica. There is no evidence that defendant knew what would happen to the women after he dropped them off: the women might not have qualified as couriers, they might have decided not

to participate, or they might have simply been summoned to Chicago not as couriers at all but as female companions for Fresh and Patrick (based on Nelson's testimony that she and Latham had been "involved" with various of the men) unrelated to any drug smuggling activities. Thus, there is no basis other than speculation for concluding that defendant brought the women to Chicago with knowledge that they intended to act as drug couriers. The point is that at the time defendant allegedly aided and abetted the "crimes," there is no evidence that the crimes had been fully conceived or planned; a number of intervening acts could have, and did, occur, making defendant's act of driving Darr and Wines from Michigan to Illinois simply too remote from any crime to hold him accountable for their actions.

However, the court concludes that the actions taken by defendant with respect to Nelson are sufficient to constitute aiding and abetting, and defendant will be held accountable for her drug quantity. Defendant not only had significantly more contact with Nelson prior to her departure for Jamaica but he had significantly more important contact with her than with Darr and Wines. Specifically, defendant drove Nelson from Battle Creek to a hotel in Chicago, drove her the next day from the hotel to the Estes apartment complex, drove her and others to a night club later in the week, drove her to a travel agency and was present when Fresh bought Nelson her airplane ticket to Jamaica, and then drove Nelson to the airport, during which time Fresh told Nelson not to say anything if she got caught and not to worry if she did because he would let her mother know what happened. In contrast to defendant's contact with Darr and Wines, which started and ended with his driving the women from Battle Creek to Chicago, his conduct with Nelson began in Battle Creek and continued through her actual departure at O'Hare airport for Jamaica. Though the court remains convinced that defendant had no control or input in

orchestrating Nelson's or any other courier's trips to Jamaica and had no real power or authority in the drug smuggling organization, the court nevertheless must find that defendant's acts of driving Nelson to the travel agent to buy her ticket to Jamaica and later to the airport for her flight out of the country constitute aiding and abetting under the relevant conduct provision of the Guidelines.

### III. CONCLUSION

Defendant Buckley will be held responsible for the quantity of drugs smuggled by Felay Nelson, but not Brenda Wines or Stacey Darr, as relevant conduct when the court calculates defendant's base offense level at sentencing.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: December 22, 2003